Case No. 22-1566, Trustees of Sheet Metal Workers et al. v. Pro Services Inc. Oral argument not to exceed 15 minutes per side, Mr. McAlpine for the appellate. May it please the Court, this is a case that was brought by the Sheet Metal Workers Pension Fund, Health and Welfare Fund, and Apprenticeship Fund, alleging that Pro Services Inc. is using FMTs or Factory Maintenance Technicians in the place of Sheet Metal Workers in its violation of the Collective Bargaining Agreement with the Sheet Metal Workers. The case in the matter progressed fine. We did discovery, and after discovery, the parties filed cross motions for summary judgment. Our motion, this is the Sheet Metal Workers motion, basically gave the Court a number of deposition testimonies of FMTs that demonstrated that they performed sheet metal work during their time in violation of a Collective Bargaining Agreement. Pro Services provided some affidavits that indicated that certain of their FMTs did not. Pro Services also contended that the Collective Bargaining Agreement was interpreted, or they interpreted, as only applying to work in the construction industry. They said that FMTs work in the manufacturing industry, and therefore this union agreement does not apply to FMTs employed by Pro Services. Let me ask you a historical question. Yes. Your case was originally consolidated with another case for the Carpenters Employee Benefit Funds, is that correct? Yes, it was. But that one was resolved? Yes, that was resolved. Okay, so that summary judgment was denied on that case, correct? Yes, it was. And then was it resolved by settlement? Yes. Okay. Now, I don't know what the settlement terms were, but they had the same counsel. What Pro Services contended is that what we think is probably a subtitle, or maybe a recital, right below the title of the contract, Sheet Metal Roofing Ventilation and Air Conditioning Contracting Division of the Construction Industry. Pro Services contended that that clause, or that subtitle, limited the collective bargaining agreement just to work in the construction industry. In response, we filed a reply brief, and we attached five declarations that basically were from contractors who indicated that they felt that the collective bargaining agreement covered all industries, because it was a trade jurisdiction, and sheet metal work is a trade. It's not manufacturing. It's a trade like a plumber's trade. collective bargaining agreement provides, this agreement comes, this agreement covers the rates and pay and conditions of employment of all employees of the employer engaged, but not limited to, and then they list sheet metal work. That's the first article. You would agree that it's a tad misleading the way that's captioned. Oh, yes. I think that the caption is probably from a 100-year-old contract. They just never changed, because you change the terms of the contract, not a subtitle. At least, that's what their thought was, because the terms are what are important, not this language up here. The language before the operative parts of the contract is not binding. It's absolutely not binding. It is, if there is an ambiguity, you can look to it, but it's not binding under the contract, and the jurisdiction is the trade jurisdiction in article one below it. This subtitle, it is, I can't explain what is there, but I assume it arose because at one time years ago, the industry was different than it is today. To go on, when we filed our reply, had the affidavits or the declarations, and pro services filed a motion to strike the affidavits or pro declarations. What they said is that the contract was not ambiguous, and therefore, this is extraneous material, and it's not to be considered. Now, a United States magistrate judge, Kent, entered an order where he struck all of our lay opinions regarding the CBA, the Collective Bargain Agreement, saying that the parties agreed that the CBA is clear and unambiguous, or they disagree about the outcome. But the Collective Bargain Agreement, both parties agreed that it wasn't ambiguous. Shortly thereafter, the district court judge entered some redisposition against the funds, basically saying that this title demonstrates that the Collective Bargain Agreement only applies to workers in the construction industry. Now, I've cited in my brief numerous cases and holdings that completely disagree with that. I cite Gibson v. Quigley, it's also known as In Re GI Holdings, for the provision that the title of a section cannot contradict or rewrite the plain language of the contractual provisions of the section. Contract headings do not constitute controlling evidence of a contract's substantive meaning. What that says is that if the CBA or contract is not, or is clear, you don't look to titles or headings to determine the provisions in the agreement, you look to the terms of the agreement. And the terms of the agreement are very clear. They say trade jurisdiction, that anyone doing sheet metal work that works for post services has to be a union member. That's the trade jurisdiction. That's how that works. Now, I also, in my brief, probably ad nauseum, cite a case that, for short, we'll just call Trainman, or Brotherhood of Trainman. And in that case, the Supreme Court states, factors of this type have led to the wise rule that the title of a statute cannot limit the plain meaning of the text. For interpretive purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for resolution of a doubt, but they cannot undo or limit what the text makes plain. Now, everyone agrees that the collective bargaining agreement is ambiguous. So you look to the text, determine the text, and the text clearly indicates that all sheet metal work, regardless if it's in the manufacturing industry, construction industry, fishing industry, that it is covered under this agreement. Now, the court, in its opinion, makes what I consider just some, maybe they didn't realize that we already had a determination that the contract was unambiguous. But what the court did, in its opinion, is it cited numerous cases, and I'll just talk, because my time's running out, about one case, International Multifoods Corporation. That was a case, it was an insurance case, against Commercial Union. This was an insurance case where Multifoods had a shipment of perishable goods that were stuck in a Russian port. And the goods went bad, and they made a claim to Commercial Union under their insurance contract. And the court found that there was a tribal issue of fact in the intention of the parties. And in that case, they said that titles can be used, headings can be used, all of those things, if it's an ambiguous contract. But if it's unambiguous, you don't look to other things. You look to the words of the contract. I mean, when parties enter into contracts, that's what they do. They write down what their agreement is. And the court has consistently said you can't pick apart an agreement by saying, well, this title or this heading says something different. Now, my time has been up, and I thank you so far. Thank you. You'll have your rebuttal time. Good morning. May it please the court. My name is Elizabeth Favaro, and I am pleased to represent ProServices, the appellee in this case. First, just let me say, in 16 years of practice, I've never been to the Sixth Circuit, so I'm very excited to be here. But down to business. My position is that the district court should be affirmed. And the reason is, there's actually three reasons. First of all, the district court's use of the title from the collective bargaining agreement was proper because the law allows it. That's number one. Number two, the body of the collective bargaining agreement, the substantive terms, support the interpretation that the district court determined was correct. And number three, what the district court did makes good sense. Starting with the law. Why does the law allow this? In June of 2008, the Supreme Court of the United States recited the very rule that I am advocating for here. Here's what it said in Florida Department of Revenue v. Piccadilly Cafeterias. A heading, it said, cannot substitute for the operative text. I agree. Nonetheless, the Supreme Court said, titles and headings are tools available for the resolution of a doubt about the meaning of an instrument. That's also what the Trainman case said. But isn't that the question? What you just said was that it is a title can be used for resolution of doubt. And isn't it the long-held case that the headings and title can and says, you can use a heading or a title if there's ambiguity in the contract. But your company has already conceded and agreed that there's no ambiguity in this contract. So I don't understand how you can look at this title and not be in violations of the headings and titles canon, Railroad Trainman, Tonguet in our court, Spur in our court, which repeat that requirement that you cannot begin the use until there is a recognized ambiguity. My response would be two things, Your Honor. Number one, it is our position that the contract is not ambiguous when you read it as a whole to include the title. When you don't read it as a whole to include the title, then it's very broad. I made that argument below. But the title helps to define the parameters of what type of work or what type of industry the collective bargaining agreement applies to. So that's our argument. Help me understand. How do you get to look at that title when all of the cases I just cited to you said you do not get to look at titles and headings unless the substantive language of the contract is ambiguous and you've already conceded it's not? Your Honor, I would disagree that the Tonguet case in particular says what you're saying. What happened in that case was it was actually quite similar to here. It included a title that talked about death in the conversion period. That's what the title was. And then the substantive text talked about the 31-day conversion period. And the question there was, is it just the 31 days? And this court said, gosh, that could create an ambiguity, but it's resolved when we look at the title. Because in Tonguet they did not know what time period the 31 days ran from and to. But here, one, your client has conceded that there's no ambiguity, and two, Article I of the CBA, which is trade jurisdiction, begins with a definition that says here is what the listed work activities are that are covered and it begins with manufacture, fabrication, assembling. All of those things are in the manufacturing industry, so you've already conceded that language is not ambiguous. So tell me again, I'm not seeing the through line to your argument that you get to include this title and say that inclusion creates an ambiguity because it's not what my reading of the law indicates is acceptable. If you look at the collective bargaining agreement as a whole, what does it apply to? We're talking about sheet metal work, we're talking about metal roofing, and we're talking about HVAC. Those are the three key things we're talking about. Well, then help me, what does the introductory language of the trade jurisdiction say when it means, or say, when it says manufacture, fabrication, assembling, handling? What do those words mean if manufacture doesn't mean manufacture? Well, what it does mean is, for example, duct work. In order to do duct work, which the collective bargaining agreement clearly applies to, you have to first fabricate these large tubes made out of metal in order to then install them. The creation of these HVAC systems, the creation of the materials, or the, I shouldn't even say the materials, but the end products that are then utilized in metal roofing, for example, that falls under the collective bargaining agreement. That's not what our FMTs are doing here. They're just working on machines. They're just helping to... Isn't that a disputed material fact? You get your chance to bring your people in and they tell you what they do. And as in the companion case, if you sit down and do what funds often do, you're going to sit down together as two sides and decide who's operating within the trade jurisdiction, who's doing sheet metal work and who isn't. You only owe on the people who are doing sheet metal work. You don't owe on the people who aren't. But that's the subject of execution of the continuation of the case because that's a factual dispute. You have to come in and you bring your evidence, they bring theirs, or as in the other case, you get together and you just work it out. The other case didn't have the same language. The other case involved a different union and it did not have any limitation, whether in the title or elsewhere, that limited the scope of the work to a particular industry. I would also say, Your Honor, that one of the things that's not in a collective bargaining agreement that typically is when you are to disregard a title is language saying the titles are just for convenience, you are to disregard them. There was a lot of argument both in the briefs as well as this morning that it's the terms that are important, not the title. How are we supposed to know how anyone is interpreting this contract when the title says what it says? I think it's important that we step back and take a look at who are the parties to this case. Neither one of these parties negotiated this contract. Neither one of these parties had the opportunity to ask questions as it was being negotiated. Neither one of these parties had the opportunity to red line it or discuss what the terms meant. This is a contract that was imposed upon ProServices as an employer that is part of an employer association. It was negotiated without their input. Can I interrupt you for a second? Looking at the contract as a whole, I realize that we are very focused on the trade jurisdiction and the titles there. This is perhaps just for context. What's not clear to me is why we are focused on that provision and not on the provisions which specifically say that as to the pension fund, you're obligated to pay specifically for the work of sheet metal journeymen, apprentices and pre-apprentices. It seems to me that that is a fairly straightforward statement about on whose behalf contributions have to be made for. How does that marry with, when we look at the entire CBA, the trade jurisdiction? Why isn't that limitation the operative limitation? That's a great question. Actually, Your Honor, I argued that we had two sets of dispositive motions in this case. I argued that in the first one. The problem with that argument, I'm trying to be intellectually honest here, is that because the FMTs are not sheet metal journeymen, they don't fall into that category. The reason is because the law really says you can't utilize non-union work to do union work, no matter what you call them. Yes, I agree with you. That is a fair limitation in the language of the contract. But what the Tackett case decided by the Supreme Court said is that when you're interpreting a collective bargaining agreement, you have to do so within the bounds of federal labor law. And federal labor law says you can't utilize non-union workers to do union jobs. We acknowledge that. And so from a pure intellectual honesty standpoint, I would say that I agree with you. And I wish that we could go that route and drive that all the way home. What I will say about that, though, Your Honor. There's a concern with circumventing, really, the overall intent of the CBA itself. Well, there's a concern with employers utilizing non-union workers and just calling them something different. What I will say, though, about that particular provision is it is interesting because it does further limit. I mean, it doesn't talk about roofers. It doesn't talk about HVAC, right? So it does demonstrate, I think, that what we're talking about here are things that occur in the construction industry. One of the things I wanted to mention in terms of who the parties are. Again, this was imposed upon pro-services, and the plaintiffs are third-party beneficiaries of this contract, the appellants. And so what I think is important to recognize is we have to take the contract as it's written and look at it as a whole. How would pro-services know that it's not meant to apply to the construction industry given that its title says as much? Well, I guess my problem is that this is the way the industry functions. There's an employer association. There's a union association. They together create these entities because they're Taft-Hartley funds. They're jointly trusteed, health and welfare, pension, all of the entities at issue. And that's why ERISA requires a writing. And absolutely requires that you honor the writing because in truth what the fund is doing is operating with someone else's money. And they are there to take care of someone else's money. And the way that it works in this industry is that the industry itself is defined in a number of locations. One, in this CBA, which we agree says manufacturing and your client agrees is not ambiguous. They're defined in the constitution of the entity that negotiated. They're defined as any and all sheet metal work used in connection with factories, warehouses, manufacturing plants, and commercial buildings. All of the writings support this. That doesn't mean that a resolution of this case is going to require there be payment on people who do not perform sheet metal work. As the companion case stated, the real question is were the FMTs performing any work described in the CBA's trade jurisdiction provision? And I'm not hearing anything from you that would require or authorize those disputes of fact to be resolved prior to or at summary judgment. Can you tell me what it is that you think would allow you to give your opinion on what these things mean or what your workers are doing before you've gone through the discovery process and resolved any disputes of material fact? We have gone through the discovery process. The FMTs, we had 30 or 40 of them testify. They all testified as to exactly what they do. They keep production lines running. They change out bearings. They fix fans. They do all of that kind of odd stuff in a manufacturing facility. They don't build anything. They don't fabricate anything. They don't actually manufacture anything. They are working on manufacturing equipment, but they themselves do not make things. They don't build things the way that the sheet metal workers do. But I probably stated it poorly, but the information that you have in the record then reveals disputes of material fact that cannot be resolved on summary judgment is what I'm saying. So help me understand how you've moved through more complete discovery maybe than my understanding, but that you do not have existing on this record disputes of material fact. Because, Your Honor, what we are saying, and I think it's important to note, ProServices does have a unionized workforce where they do pay these funds when they utilize those union workers. The reason there's no genuine issue of material fact is because you can look at the trade jurisdiction and say, when these tasks are being performed within the construction industry, then yes, ProServices has a payment obligation. But when these tasks in Article I are being performed in any other industry, then they are not constituting covered work. And it's not like I have metal roofers working in the manufacturing industry. We have people who are actually just changing out, again, changing out bearings, fixing switches, fixing rollers on the bottom of the machine. They're not building anything. They're not fabricating anything. They're not actually doing the kind of work that you're describing here. That's the reason. Okay. I think your time's up. I think so. Thank you very much. I don't have anything to add to the argument I made. We would just waive the additional time. There's really no purpose unless there are questions. I have none. Questions? No. Thank you. Thank you. We thank you both for your helpful briefing and arguments. The case will be reviewed. The case will be taken under advisement and an opinion issued in due course.